

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

DIVISION OF
ENFORCEMENT

October 17, 2024

<u>Via ECF</u>

The Honorable Vernon S. Broderick
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    SEC v. Thurlow, et al., No. 21 Civ. 7700 (VSB) (S.D.N.Y.)

Dear Judge Broderick:

> APPLICATION GRANTED
> SO ORDERED /s/ Vernon Broderick   10/17/2024
> VERNON S. BRODERICK
> U.S.D.J.

respectfully requests that the Court (i) permit the parties, by the Order's October 25, 2024 deadline, to submit a partial proposed scheduling order that would propose dates for the parties' initial disclosures and initial document requests but (ii) permit the parties to submit the joint letter, and a complete proposed case management plan and scheduling order with all further dates, including the completion of fact and expert discovery, 14 days after the Court's resolution of this representation issue. Defendants consent to this adjournment request.

Fidler's Representation of the Fidler Defendants
<u>Presents a Substantial Risk of Ethical Improprieties Warranting Disqualification</u>

      As this Court has recently recognized, "[f]ederal courts possess the authority to disqualify counsel, which derives from their inherent power to preserve the integrity of the adversary process." *Ameriway Corp. v. Chen*, No. 19-CV-9407 (VSB), 2024 WL 4362731, at *5 (S.D.N.Y. Oct. 1, 2024) (cleaned up). Although "[d]isqualification is only warranted in the rare circumstance where an attorney's conduct poses a significant risk of trial taint[,] … any doubt is to be resolved in favor of disqualification" because "the public's interest in the outcome of litigation is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." *Id.* (cleaned up).

      This case presents such a "rare circumstance." Fidler acts not only as counsel to the Fidler Defendants (among whom there are potentially divergent interests) but is himself a named Defendant, whom the Complaint alleges had a central role in orchestrating the fraudulent scheme at issue in this case, and a witness to the underlying events. (*See, e.g.*, Complt., Dkt. No. 1, ¶¶ 1-

7.) The likelihood that his professional judgment on his clients' behalf will be adversely affected by his personal interest in this case and the Fidler Defendants' potentially differing interests calls into question whether his continuing representation of the Fidler Defendants violates New York State Rule of Professional Conduct ("Rule") 1.7(a), which provides:

> Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.[1]

N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200. Comment 10 to Rule 1.7 clarifies this standard (emphasis added): "The lawyer's own financial, property, business or other personal interests should not be permitted to have an adverse effect on representation of a client. *For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.*"

Even at this stage of litigation, before discovery begins, Fidler's personal interests appear to conflict with those of the Fidler Defendants on issues of central importance to both liability and relief. For example, as to liability, the Complaint alleges that Fidler, with Defendants Simon Thurlow ("Thurlow") and Richard Oravec ("Oravec"), orchestrated the fraud with which the SEC has charged Defendants. Among other things, the Complaint alleges that Fidler backdated convertible debt instruments (Dkt. No. 1 ¶¶ 3, 5) and that Boucher, B. Fidler, and Western Bankers knowingly or recklessly executed materially false and misleading representation letters to effectuate their conversions into free-selling shares (*id*. at ¶¶ 4, 6). The Fidler Defendants may testify at their depositions that they did not act knowingly in making these representations, thus stating or implying that Fidler had misled them. With respect to relief, the Complaint alleges that the Fidler Defendants reaped most of the millions of dollars in unlawful fraudulent proceeds (*id*. at ¶¶ 1, 93, 109, 110) and then channeled some of them to Fidler (*id*. at ¶¶ 94, 116). Fidler and the Fidler Defendants have a direct conflict of interest in either challenging or conceding these allegations and in pointing the finger at each other as to who ultimately received these proceeds.

These conflicts (and others that may foreseeably develop) will likely taint this adversary proceeding well before trial, including throughout discovery and during any settlement negotiations that may take place. It is foreseeable that Fidler's personal interests will affect his professional judgment in preparing the Fidler Defendants for and defending them in depositions. For example, should his clients provide testimony prejudicial to his own personal interest, his personal interest in cross-examining them will conflict with his duty of loyalty. These conflicts will also likely arise in the context of any settlement negotiations, including as to the Fidler Defendants' willingness to impart information to the SEC about the fraud proceeds' disposition

---

[1] Rule 1.7(b) allows a lawyer to represent clients notwithstanding the existence of a conflict of interest "if (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing."

— that is, whether any of them still have the proceeds, or whether they channeled the funds back to Fidler.

Case law supports the disqualification of counsel in these circumstances. *See, e.g.*, *Decker* v. *Nagel Rice LLC*, 716 F. Supp.2d 228, 234-235 (S.D.N.Y. 2010) (in a legal malpractice case, where plaintiff's counsel had been involved in the prior representation at issue and defendants had announced their intention to name him as a third-party defendant, holding that this conflict of interest required disqualification); *see also Gleason v. Zocco*, 941 F. Supp. 32, 35-36 (S.D.N.Y. 1996) (granting motion to disqualify counsel where he was personally involved in "every aspect of the underlying controversies that led to this lawsuit," and his "unique personal interest in this case presents an endless parade of likely conflicts of interest").

Indeed, Fidler appears to concede the likelihood of substantial conflicts of interest in the waiver letters addressed to the Fidler Defendants. (Dkt. Nos. 78.1 at 1, 78.2 at 1, and 78.3 at 1.) The letters also beg the question of whether they demonstrate the Fidler Defendants' genuinely informed consent, because they suggest that Fidler discussed his Rule 1.7(a)(1) personal interest conflict only in general terms, did not address his Rule 1.7(a)(2) differing interests conflict, and did not adequately explain the impact those conflicts could have on his professional judgment. (*Id.*) Even if the Fidler Defendants gave informed consent, Fidler could not "reasonably believe" (as Rule 1.7(b)(1) requires) that he could competently and diligently represent each of them under these circumstances given his personal interest conflict.

Additional professional responsibility issues are likely to arise if Fidler continues to represent the Fidler Defendants. For example, Fidler would undoubtedly be a necessary witness in this proceeding and his truthful testimony may be prejudicial to his clients, thus requiring disqualification under Rule 3.7, Lawyer as Witness. Even Fidler acknowledges that it may be impossible for him to represent the Fidler Defendants at trial (Dkt. No. 78). The Court should therefore resolve the issue of Fidler's representation now and not on the eve of trial, when his withdrawal as counsel could prejudice his clients and delay this proceeding.

In sum, Fidler's representation of the Fidler Defendants presents a substantial risk of ethical improprieties warranting his disqualification.[2]

### The Court Should Adjourn the Filing of the Parties' Complete Joint Submissions

The Order currently requires the parties to submit their joint letter, and proposed case management plan and scheduling order by October 25, 2024. However, if the Court disqualifies Fidler, any deadlines for certain discovery he agrees to now on the Fidler Defendants' behalf, including for the completion of depositions and fact discovery, would likely need to be adjourned. Accordingly, the SEC respectfully proposes that the Court permit the parties to submit on October 25 a partial proposed case management scheduling order with proposed dates for the parties to exchange initial disclosures and first requests for production of documents, but adjourn the deadline for the parties to submit a complete case management and proposed scheduling order and the joint letter to a date 14 days from the Court's resolution of the representation issues addressed above.

---

[2] If the Court nevertheless permits Fidler to represent the Fidler Defendants, the SEC may raise additional ethical issues to the extent they arise as the case proceeds.

The Honorable Vernon S. Broderick
October 17, 2024
Page 4

                              Respectfully submitted,

                              */s/ Abigail Rosen*
                              Abigail Rosen

cc (via ECF):  Roger Fidler, Esq. (*Pro Se* and Counsel to Fidler Defendants)
                    Joseph Siciliano, Esq. (Counsel to Defendants Thurlow and Oravec)

cc (via email): JD Jordan (*Pro Se*)

The Honorable Vernon S. Broderick
October 17, 2024
Page 4

Case 1:21-cv-07300-VSB-SN   Document 86   Filed 10/17/24   Page 4 of 4