**ROGER L. FIDLER**
**Attorney at Law**
**1522 Gardner Drive**
**Lutz, Florida 33559**
**(201) 220-8734**
**(201) 464-7943 (Fax)**
rfidler0099@aol.com

December 18, 2024

**VIA PACER**

The Honorable Vernon S. Broderick
United States Courthouse
Foley Square
New York, NY 10007

     RE: SEC v. Thurlow, et al., 1:21-cv-07700-VSB-SN (S.D.N.Y.)

Dear Judge Broderick:

     In response to Your Honor's instruction to cite to the case in which I was personally involved, I contacted the client who I thought I had represented and he indeed remembered that I had discussed the matter with him, but it was not his case. He thought the discussion occurred around 2010. I regret that I was unable to locate any file to further assist the court in that fashion.

     The issue of attorney disqualification apparently has a long history. In a thorough examination of the history and philosophical basis for motions to disqualify attorneys, Associate Professor of Philosophy Lawrence Croker from the University of Washington, writing a Comment for the Duke University Law Journal, The Ethics of Moving to Disqualify Opposing Counsel for Conflict of Interest, Vol. 1979 1310, noted that the substantial relationship test was first enunciated in *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953);.also citing *Government of India v. Cook Indus.*, 422 F. Supp. 1057,1060 (S.D.N.Y. 1976), aff'd 569 F.2d 737 (2d Cir 1978), and cases cited therein. (When the requisite substantial relationship exists, the court will irrebuttably presume that the attorney received confidential information relevant to the present case).

     In a more recent case, *Ragdoll Productions (UK) LTD. and the Itsy Bitsy Entertainment Company v. Wal-Mart Stores, Inc., Soma International Limited and Way Out Toys, Inc.*, 1999 WL 760209 (SDNY), No. 99 CIV. 2101 (DLC) Sept. 27, 1999, the Court refused to disqualify counsel, noting:
"DISCUSSION...Motions to disqualify are subject to strict scrutiny because of their potential to be used for tactical purposes. *See Lamborn v. Dittmner, 873 F.2d 522, 531 (2d Cir.1989)*. Nonetheless, the Code of Professional Responsibility, as adopted and amended in New York on June 30, 1999, contains the following provision:
§ 1200.21 Lawyers as Witness...(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness

on a significant issue on behalf of the client, the lawyer *shall not serve as an advocate on issues of fact before the tribunal,* except that the lawyer may continue as an advocate on issues of fact and may testify in the circumstances enumerated in section 1200.21(b)(1) through (4) of this Part. (d) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness on a significant issue other than on behalf of the client, *the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client* at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal. DR 5–102, N.Y. ORDER 99–21, *available in* Westlaw, NY–ORDERS database (to be codified at 22 NYCRR § 1200.21) (emphasis supplied). Subsections (c) and (d) are the current version of DR 5–102(A) and (B). The newly adopted version, at subsection (c), adds the requirement that the lawyer must be a witness "on a significant issue" and qualifies the "as an advocate" language with the phrase "on issues of fact." The word "withdraw" has also been changed to "not serve."[2] Subsection (d) also adds that the lawyer must be a witness "on a significant issue."...**\*2** In interpreting the prior version of subsection (c), the Second Circuit held that The test under subdivision (A) is whether the attorney's testimony could be *significantly useful* to his client. If so, he should be disqualified regardless of whether he will actually be called. *Lamborn,* 873 F.2d at 531 (emphasis supplied). Similarly, the prior version of subsection (d) has been interpreted to "come[ ] into play where a lawyer's testimony would contradict or undermine his client's factual assertions." *Lamborn,* 873 F.2d at 531. The party bringing the motion under subsection (d) carries the burden to show both the necessity of the testimony and the substantial likelihood of prejudice. *National Union Fire Ins. v. L.E. Myers Co. Group,* 937 F.Supp. 276, 281 (S.D.N.Y.1996)(emphasis added); *Stratavest Ltd. v. Rogers,* 903 F.Supp. 663, 667 (S.D.N.Y.1995). The following factors have been considered in determining whether the necessity requirement has been met: A finding of necessity takes into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence. Testimony may be relevant and even highly useful but still not strictly necessary. In cases where the lawyer's testimony is highly relevant and solely within her possession, it is apparent that she must be disqualified. *Stratavest,* 903 F.Supp. at 667.

Under these principles, Mr. Alstadt may continue to represent his client in pretrial proceedings in this case. Several courts in this district have held that a lawyer who may be called as a witness at trial is entitled to participate in pretrial proceedings under appropriate circumstances. In *Conigliaro v. Horace Mann School,* 95 Civ. 3555(CSH), 1997 WL 189058, at \*4 (S.D.N.Y. Apr. 17, 1997), Judge Haight found that the testimony of a defendant's attorney was not significantly useful to his client. In holding that the attorney need not be disqualified prior to trial, Judge Haight observed that the concerns of DR 5–102(A) and (B) "arise out of an attorney's presence at trial" and were not implicated in that case by permitting the attorney to represent the client prior to trial. Instead, permitting pretrial representation "protect[ed] the clients' right to chose their own counsel." *Id.* at \*4. Other courts in this district have reached similar conclusions. *See Rosenfield v. Orentreich,* 98 Civ. 2721(TPG), 1998 WL 567750, at \*4 (S.D.N.Y. Sept. 4, 1998) (not clear that defendant's attorney was a necessary witness); *Culver v. Merril Lynch & Co.,* No. 94 Civ. 8124(LBS), 1997 WL 223088, at \*3 (S.D.N.Y. May 5, 1997) (no request to disqualify defense counsel for pretrial proceedings). Under these cases, the fact that Mr. Alstadt will be a witness at trial, by itself, is insufficient to require his disqualification. Furthermore, the new subsection (c) is consistent with this result. The addition of the words "on issues of fact" so that the rule applies to "an advocate on issues of fact before the tribunal" further emphasizes that the

concern of the section is advocate-witness participation in fact finding, and not in pretrial proceedings."

From the line of cases cited above, it is apparent that 1) the outcome could be highly dependent upon the precise wording of the Rules of Professional Conduct; and 2) the establishment of the necessity of the use of the testimony of the attorney at trial by the protesting party. There is a great paucity of such material specified by the Plaintiff SEC in their Letter Memorandum in the instant case.

"*3 The present facts are distinguishable from Gleason v. Zocco, 941 F.Supp. 32, 35–36 (S.D.N.Y.1996), which disqualified plaintiff's counsel at the beginning of the case. In Gleason, Judge Rakoff held that a lawyer's "extensive personal involvement in every aspect of the underlying controversies" presented an "endless parade of likely conflicts of interest" and required "disqualification at any stage of the litigation." Id. Similarly, in Soberman v. Groff Studios Corp., No. 99 Civ. 1005(DLC), 1999 WL 349989 (S.D.N.Y. June 1, 1999), this Court disqualified plaintiff's counsel from the entire case where the action was predicated on the interactions between him and the defendants. By contrast, in this particular case, Mr. Alstadt's involvement in the underlying transactions is apparently limited to the giving of the opinion letter. No evidence or argument has been made suggesting that Mr. Alstadt's participation will create any conflicts or otherwise impede the orderly conduct of pretrial proceedings. Cf. Gleason, 941 F.Supp. at 35 (lawyer's "unique personal interest in this case presents an endless parade of likely conflicts of interest").
Finally, subsection (d) does not compel a contrary result. Subsection (d)'s language that "the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial" has been applied to require disqualification prior to trial once there has been a finding of a likelihood of prejudice. See Fulfree v. Manchester, 945 F.Supp. 768, 771–72 (S.D.N.Y.1996) (under previous version of 5–102(B)). Plaintiffs have not come close to carrying their burden to show that Mr. Alstadt's testimony will be prejudicial to defendants. Plaintiffs have only argued generally that because of the meritorious nature of their claims and the circumstances in which the opinion was given, Mr. Alstadt's testimony must be detrimental to the defendants' claims. There is no claim that Mr. Alstadt's specific testimony will contradict positions that his clients have advanced or intend to advance in this litigation. Plaintiffs have therefore failed to carry their heavy burden under subsection (d). As a result, there is no basis for the disqualification of Mr. Alstadt at this stage in the litigation."

Bringing the case law forward:
        In S. O'Rear v. Armando Diaz, 2024 WL 3983363 SDNY 24 Civ. 1669 (PAE) Signed August 29, 2024, the Court stated:
"*1 This decision resolves a motion to disqualify defense counsel. Plaintiff S. O'Rear sues her employer Merkley + Partners Inc. ("Merkley"), Merkley's parent company, Omnicom Group Inc. ("Omnicom") (collectively, the "corporate defendants"), and individual defendant Armando Diaz. She alleges that Diaz, Merkley's creative director, sexually assaulted and raped her after a holiday happy hour. She brings federal claims of sexual harassment and negligent supervision under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). She brings a New York state-law claim of sexual battery. And she brings New York City law claims of gender motivated violence under the Gender Motivated Violence Protection Act, N.Y.C.

Admin. Code §§ 10-1101 *et seq.* ("GMVPA"), and sexual harassment under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-502(a) *et seq.* ("NYCHRL").

O'Rear now moves to disqualify outside counsel for the corporate defendants—attorney Maureen McLoughlin, Esq., and her law firm Davis & Gilbert LLP ("Davis & Gilbert")—on the grounds that McLoughlin purportedly misled O'Rear in an investigative interview to believe that she was acting as O'Rear's attorney, and that McLoughlin is a potential fact witness at trial."

O'Rear v. Diaz, No. 24 CIV. 1669 (PAE), 2024 WL 3983363, at *1 (S.D.N.Y. Aug. 29, 2024)...

### 3. Witness-Advocate Rule

**\*11** Next, O'Rear seeks to disqualify McLoughlin based on the witness-advocate rule as embodied in New York Rule of Professional Conduct 3.7. In relevant part, Rule 3.7(a) provides that a "lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." O'Rear argues that McLoughlin's participation on the September 6 call and her involvement in the investigation of O'Rear's complaint renders her an important fact witness at trial. She contends that McLoughlin could testify as to: (1) what O'Rear said during her interview with human resources about the sexual assault and sexual harassment; and (2) Merkley's investigation, which Merkley may invoke in support of a potential affirmative defense that it exercised reasonable care to prevent and correct sexual harassment by employees like Diaz.

Although McLoughlin's disqualification may prove to be required if this case reaches trial, the witness-advocate rule does not require her disqualification now. Disqualification on the basis of that rule is **"triggered only when the attorney actually serves as an advocate before the jury."** *Finkel*, 740 F. Supp. 2d at 373. And at the trial stage, if such a motion is renewed based on McLoughlin's anticipated service as a witness, it would be germane which party intends to call McLoughlin at trial. Where the only party who proposes to call the attorney is the adversary moving for disqualification, courts rightly review such motions with care and the claimed need for the witness's testimony as potentially a tactical ploy. "[T]he movant must demonstrate both that the lawyer's testimony is 'necessary' and that there exists a 'substantial likelihood that the testimony would be prejudicial to the witness-advocate's client.' " *John Wiley & Sons*, 126 F. Supp. 3d at 420 (citing *Acker v. Wilger*, No. 12 Civ. 3620 (JMF), 2013 WL 1285435, at *1 (S.D.N.Y. Mar. 29, 2013)). Prejudice exists where the testimony would be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989).

McLoughlin's continued representation through discovery and anticipated summary judgment motions does not violate the witness-advocate rule because, during those junctures, no trial will be impending. The "witness-advocate rule is concerned with preventing potential taint *at trial*." *Ross v. Blister*, 09 Civ. 8666, 2009 WL 4907062, at *3 (S.D.N.Y. Dec. 21, 2009); *see also Ramey*, 378 F.3d at 282 ("The advocate-witness rule applies, first and foremost, where the attorney representing the client *before a jury* seeks to serve as a fact witness *in that very proceeding*." (emphasis added)). The case is in an early stage of litigation. The parties had paused motions practice for several months to attempt to attain a settlement; the Court has recently granted a motion to extend fact discovery until late December; and defendants' motions to dismiss have not been fully briefed. Any trial is far away. And it is conjecture to posit that McLoughlin will necessarily be a fact witness at a trial, such that the concerns of trial taint and jury confusion that underlie the witness-advocate would come into play.8 At this stage, "it is impossible to determine how significant [McLoughlin] might be as a witness or whether [s]he is

likely even to be called as a witness; whether h[er] testimony would likely hurt or help h[er] client; or whether h[er] testimony would or would not be cumulative of other witnesses." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 810 (S.D.N.Y. 2018); *see, e.g., id.* ("Here, where there is no record on which to base a disqualification motion, the Court cannot determine with sufficient certainty that defendants have borne their 'high burden' to show that [the attorney's] testimony will be necessary at trial or that the content of that testimony is likely to be prejudicial."); *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 304 (E.D.N.Y. 2009) (denying motion to disqualify where determination "would be merely speculative at this point" in litigation); *Rosefield v. Orentreich, No. 98 Civ. 2721 (TPG), 1998 WL 567750, at \*5–6 (S.D.N.Y. Sept. 4, 1998)* (denying motion to disqualify where it was not clear that case would proceed to trial or that counsel would be called to testify; "too much remains unknown")."

Likewise, in this case, too much remains unknown and proof of conflict is unproven by the statements of the SEC. To remind the Commission of what is not proof, note the following case, which, although the extraordinary relief sought by the Commission was a TRO and asset freeze, the admonition is equally apt:

"The Commission and its attorneys understand the distinction between a directly supported factual assertion and an inference purportedly drawn from indirect factual support. They understand that when presenting an inference to a court, they are required to characterize it as such and make clear to the court what indirect factual support they believe supports that inference. They understand that, particularly in an ex parte context, when its showing for obtaining the extraordinary relief sought is based on inferences, a court will closely scrutinize the bases for those inferences to ensure the relief is warranted." SEC v. Digital Licensing, Inc. dba Debtbox, et al., Memorandum Decision and Order, Case No. 2:23-cv-00482, Document, 275, 64-65 (D. Utah 2024).

Until the SEC Motion is backed by facts the unsupported allegations in the Complaint seem to be insufficient to warrant disqualification and, at a minimum, the instant motion should be denied, at least with regard to serving prior to trial and subject to the more complete analysis of the facts which may be asserted after discovery has permitted refutation of any actual facts asserted by the Commission and whether other testimony can be shown to capable of submission by the Commission to avoid the necessity of testimony from defense counsel with respect to items that would cause an actual conflict and thus deprive the Fidler defendants of the right to counsel of their choice.

Respectfully submitted,
/s/ Roger Fidler
Roger Fidler, Pro Se and for defendants
Bryce Emory Boucher, Bradley Fidler and
Western Bankers Capital, Inc.

PS: I request an extension of the filing deadline by the few additional hours that was needed to correct some odd formatting issues that arose late on the evening of the 17th when I attempted to add the quote from Debtbox and a variety of unexpected and unwanted insertions appeared throughout the document.