UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                               :
SECURITIES AND EXCHANGE            :
COMMISSION,                                         :
                                                                               :
                                            Plaintiff,     :            21-CV-7700 (VSB)
                                                                             :
                    - against -                           :                **AMENDED**
                                                                              :       **OPINION & ORDER**
                                                                               :
SIMON PIERS THURLOW, *et al.*,            :
                                                                               :
                                                             Defendants.  :
                                                                               :
------------------------------------------------------------X

Appearances:

Victor Edward Suthammanont
Abigail Elizabeth Rosen
Elizabeth Claire Rosen
Mary Kay Dunning
Richard R. Best
United States Securities Exchange Commission
New York, New York
*Counsel for Plaintiff*

Joseph Anthony Siciliano , Jr
Joseph A. Siciliano, P.C.
Decatur, Georgia
*Counsel for Defendant Simon Piers Thurlow*

Roger L. Fidler
The Law Offices of Roger L. Fidler
New York, New York
*Pro se and counsel for Defendants Simon Piers Thurlow and Bryce Emory Boucher*

VERNON S. BRODERICK, United States District Judge:

       This Amended Opinion & Order amends the Opinion & Order dated September 5, 2024

denying Defendants' motion to dismiss. (Doc. 51.)

1

This is an enforcement action brought by the Securities and Exchange Commission ("Plaintiff" or "SEC") against Simon Piers Thurlow ("Thurlow"), Roger Leon Fidler, Esq. ("R. Fidler"), Richard Oravec ("Oravec"), Bradley Fidler ("B. Fidler"), Bryce Emory Boucher ("Boucher"), Joseph D. Jordan ("Jordan"), and Western Bankers Capital Inc. ("WBC," and collectively, the "Defendants"), pursuant to various provisions of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Currently before me is Defendants' motion to dismiss for failure to state a claim under the Federal Rule of Civil Procedure 12(b)(6). (Doc. 36.) Because I find that Plaintiff has presented sufficient factual allegations to plausibly state its claims, Defendants' motion is DENIED.

## I.   Factual and Legal Background[1]

### A.   Relevant Statutory Framework

Two aspects of securities law are relevant to this case. First, the Securities Act and the Exchange Act each prohibit the use of fraud or deceit in connection with the sale of a security. Section 10 of the Exchange Act, 15 U.S.C. § 78j(b), prohibits the use of "any manipulative or deceptive device or contrivance in contravention of" SEC regulations in connection with the sale of a security. *See also* 17 C.F.R. § 240.10b-5 (setting forth the associated implementing regulation). Similarly, Section 17(a) of the Securities Act, 15 U.S.C. § 77(a), prohibits the use of "any device, scheme, or artifice to defraud," and making misleading or fraudulent statements, in connection with the sale of a security.

Second, the Securities Act generally makes it unlawful for an "issuer" or "underwriter" of a security to sell a security that is not registered with the SEC. 15 U.S.C. §§ 77d(a)(1), 77e(a),

---

[1] The facts contained in this section are based upon the factual allegations set forth in Plaintiff's Complaint and Jury Demand ("Complaint"). (Doc. 1.) I assume the allegations the Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

2

77e(c).  As relevant here, "[t]he term 'issuer' means every person who issues or proposes to issue any security".  15 U.S.C. § 77b(a)(4).  The parties do not dispute that DOLV was an "issuer" of securities for purposes of this case.  (*See* Mot. Br. at 27.)  "Underwriter" means, among other things, any person who has purchased securities from an issuer with a view towards public resale.  15 U.S.C. § 77b(a)(11).  Finally, "[a]n affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."  17 C.F.R. § 230.144(a)(1).

Some transactions are exempt from the registration requirement.  SEC Rule 144, codified at 17 C.F.R. § 230.144, lists several "safe harbors" obviating the need to register a securities transaction.  For instance, a person who has acquired a security from an issuer (that is not otherwise required to register the security) may resell the security without registering it if either six months or twelve months have passed since the date of acquisition.  17 C.F.R. § 230.144(d)(1)(i)–(ii).  The six-month holding period applies to securities of an issuer that is subject to SEC reporting requirements, *id*. § 230.144(d)(1)(i), and the one-year holding period applies to securities of an issuer that is not subject to SEC reporting requirements, *id*. § 230.144(d)(1)(ii).

These holding periods and other "safe harbor" provisions are not available, however, when the issuer of the security is or has ever been a shell company.  In this context, an issuer is a "shell company" if it has, or "at any time previously" had:  "(A) No or nominal operations; and (B) Either:  (1) No or nominal assets; (2) Assets consisting solely of cash and cash equivalents; or (3) Assets consisting of any amount of cash and cash equivalents and nominal other assets."  *Id*. § 230.144(i)(1).

3

### B. The Reverse Merger

Dolat Ventures, Inc. ("DOLV"), a purported mining business with interests in Sierra Leone, stated in approximately December 2015 that "it was changing its business to own and operate rental properties in the United States." (Compl. ¶ 29.) Around the same time, an associate of DOLV's former controlling shareholder became the sole officer, director, and president of DOLV (the "Nominal Director"). (*Id*.)

Richard Oravec was the owner of Pivo Assoc., Inc. ("Pivo"), through which he served as the investor-relations contact for several microcap issuers, including DOLV. (*Id*. ¶ 16.) In approximately August 2016, Oravec learned from an associate in China that DeQun Wang ("Wang")—a Chinese national who purportedly owned a company that manufactured electric vehicles and batteries—was looking to publicly list his company, JB&ZJMY Holding Company, Ltd. ("JBZY"), in the United States. (*Id*. ¶ 31.) One way for JBZY to become publicly listed was through a reverse merger with an already publicly listed company like DOLV. (*Id*.)

In August 2016, Thurlow and Fidler became aware that DOLV was for sale. "Oravec contacted Thurlow, a long-time acquaintance, who informed Oravec that he had companies, including DOLV, available for purchase," and "Oravec [then] presented DOLV to Wang, who agreed to acquire control of the company." (*Id*. ¶ 32.) Oravec, R. Fidler, and Thurlow (R. Fidler's "law clerk") negotiated and structured the reverse merger through which JBZY was acquired by DOLV. (*Id*. ¶¶ 14, 33.) The DOLV reverse merger closed on December 2, 2016, with a total price of $110,000 paid by Wang. (*Id*. ¶ 40.)

### C. The Convertible Note

When reviewing DOLV's corporate records in connection with the reverse merger, Thurlow and Ovarec discovered that DOLV owed its former accounting firm ("Accounting Firm") $14,115 for services rendered in about 2013. (*Id*. ¶ 34.) Ovarec contacted the owner of

4

the Accounting Firm, and the two agreed that (1) DOLV would issue a note convertible to shares of DOLV evidencing the $14,115 debt (the "Convertible Note" or "Note"), and (2) the Accounting Firm would sell the Note as part of the reverse merger for $4,000.  (*Id*. ¶ 35.)  The Note was convertible to shares of DOLV at a rate of $0.0001 per share (for a total of 141,150,000 shares).  (*Id*. ¶ 37.)  In the Fall of 2016, Thurlow drafted the Note, but backdated it to October 13, 2015.  (*Id*.)  The Note was then signed by the Accounting Firm and the Nominal Director around December 2016.  (*Id*. ¶ 38.)

Thurlow and Oravec arranged for the Note to be purchased by a Chinese translator ("Translator").  (*Id*. ¶ 36.)  "Nothing on the face of the [Convertible] Note indicated that it was executed in 2016, as opposed to the October 13, 2015 date appearing on the note."  (*Id*. ¶ 39.)

After the reverse merger, in February 2017, Thurlow was approached by two long-time acquaintances regarding the purchase of the Note:  Boucher, who was purportedly in various business ventures and invested in microcap issuers, and Joseph Jordan ("Jordan"), who was the owner of WBC, a Delaware corporation.  (*Id*. ¶ 42.)  Through a series of transactions between February and May 2017, Boucher and Jordan (through WBC) purchased debt from the Note, converted it to DOLV shares, and sold over 90 million shares for over 3 million dollars.  (*See* Compl ¶ 43 Table 1.)

The transactions each followed a similar pattern.  First, Thurlow and Oravec would arrange for Boucher or Jordan/WBC to purchase the debt under the Note, ostensibly from the Translator.  The purchase price, however, was typically paid to Oravec or his company, Pivo, for the purpose of "advanc[ing] DOLV's interests in the United States."  (*Id*. ¶¶ 44, 70, 80.)  The purchase payment was usually a nominal amount.  For example, Boucher and Jordan paid $2,600 for the debt which was convertible into 26 million DOLV shares worth over $1,200,000.  (*Id*. ¶¶

5

43 Table 1, 45, 70.) Second, Thurlow and Oravec would obtain an opinion letter from an attorney, Charles Parkinson Lloyd ("Lloyd"), opining that the converted DOLV shares were "freely tradable" in compliance with the law. (*Id*. ¶¶ 56, 65,77, 87.) Third, after Oravec and Thurlow presented the opinion letter to Boucher and WBC's broker ("Broker"), the Broker would then accept the deposit of DOLV shares and remove its internal restrictions on the sale of the DOLV shares, after which the shares would be sold on the market.[2] (*Id*. ¶¶ 57, 65, 78, 90.)

By backdating the Note and falsely representing to Lloyd that the debt was originally acquired in October 2015, (Compl. ¶¶ 50, 64, 75, 83), Thurlow and Oravec ensured that Boucher and Jordan/WBC appeared to be holders of the DOLV shares for more than one year in compliance with Rule 144. In fact, at the time, the Convertible Note memorializing the debt from which the shares originated was only four months old. Thurlow and Oravec also falsely represented to Lloyd and caused him to write in the opinion letters that Boucher and Jordan/WBC "will not take any re-sale of the [DOLV] shares," (*id*. ¶ 55, 64, 75, 83), such that they would not be deemed DOLV's underwriters. Thurlow and Oravec also falsely represented and that DOLV was not a shell company, (*id*.), while in fact DOLV had no or nominal operations and no assets, (*id*. ¶ 51).

### D.    The Fidler Shares

In May 2017, R. Fidler and Thurlow discovered that DOLV had an outstanding receivable from its former transfer agent ("Transfer Agent") in the amount of $1,200. (*Id*. ¶ 98.) Thurlow arranged for Jordan/WBC to purchase the outstanding receivable from the Transfer Agent and drafted corporate resolutions making the debt convertible into 7,000,000 DOLV

---

[2] Oravec and Thurlow initially sought an opinion letter from a Las Vegas attorney, (Comp. ¶ 46); however, the Broker would not accept the opinion letter because the Las Vegas attorney did not meet the Broker's internal criteria that the letter should be from "a law firm listed on the American Lawyer's 'AmLaw 200' list or from a top regional law firm with expertise in securities law," (*id*. ¶ 53).

shares at $0.0001 per share, with terms identical to those of the first Convertible Note. (*Id.* ¶¶ 98, 99.) In other words, Thurlow arranged for DOLV to issue shares—worth approximately $434,000 at the time—in satisfaction of a $1,200 debt. (*Id.* ¶ 99.) The convertible debt was then purchased for $1,250 by R. Fidler's son, Bradley Fidler; the purchase price was paid from the business account of R. Fidler's law firm. (*Id.* ¶ 100.) The documents related to these transactions drafted by Thurlow all purport to be signed by Wang, but none of Wang's signatures match the signatures that appear on the prior DOLV documents related the reverse merger and the Convertible Note. (*Id.* ¶ 101.)

Subsequently, similar to the previous transactions, R. Fidler and B. Fidler falsely represented to Lloyd that the securities in connection with the convertible debt was acquired in 2012 (when in fact they were acquired in 2017), that B. Fidler would not engage in any resale of the shares, and that B. Fidler had no relationship with DOLV—despite that his father acted as counsel to the company. (*Id.* ¶ 106.) Lloyd issued an opinion letter to the Broker based on these representations, stating that the sale of the DOLV shares complied with the law; the Broker then "removed its internal restrictions on the sale of the shares" in reliance on the opinion letter. (*Id.* ¶ 108.) Then, B. Fidler sold shares between August 8 and September 7, 2017 "for proceeds of approximately $541,551." (*Id.* ¶ 109.) Thereafter, B. Fidler purchased, converted and sold another tranche of DOLV shares in a similar manner. (*Id.* ¶¶ 110–16.)

## II. Procedural History

Based on these factual allegations, the SEC initiated this action against Thurlow, R. Fidler, Oravec, B. Fidler, Boucher, Jordan (together, "Individual Defendants") and WBC. The SEC filed the Complaint on September 15, 2021. (Doc. 1 ("Compl.").) The complaint asserts six claims: (1) that all Defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c), (Compl. ¶¶ 117–19); (2) that Defendants Thurlow, Oravec, Boucher, and B.

7

Fidler violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, (Compl. ¶¶ 120–22); (3) that Defendants Thurlow, Oravec, Boucher, and B. Fidler violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), (Compl. ¶¶ 123–25); (4) that Defendant R. Fidler violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) promulgated thereunder, 17 C.F.R. § 240.10b-5(a), (c), (Compl. ¶¶ 126–28); (5) that Defendant R. Fidler violated Sections 17(a)(1) and (a)(3) of the Securities Act, 15 U.S.C. § 77l(a)(1), (a)(3), (Compl. ¶¶ 129–31); (6) that Defendants Thurlow, Boucher, R. Fidler, B. Fidler, and Oravec are liable for aiding and abetting certain of each others' violations, (Compl. ¶¶ 132–36).

After three extensions, Defendants filed their motion to dismiss, attaching various supporting documents and a memorandum of law. (Docs. 36, 37.) On January 27, 2022, Plaintiff filed its opposition, (Doc. 40), and Defendants filed a reply and amended reply on February 10 and February 14, 2022, respectively. (Docs. 41, 42).

### III. Legal Standards

#### A. Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted).

### B. Pleading Fraud

"It is well-settled in this Circuit that a complaint alleging securities fraud must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure," *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000), whereby a plaintiff "must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b). The allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (internal quotation marks omitted). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "a plaintiff must still 'allege facts that give rise to a strong inference of fraudulent intent,'" *Carolina Cas. Ins. v. Cap. Trucking, Inc.*, 523 F. Supp. 3d 661, 679 (S.D.N.Y. 2021) (quoting *Vaughn v. Air Line Pilots Ass'n*, 604 F.3d 703 (2d Cir. 2010)). "A strong inference of fraudulent intent may be established

9

either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 466 (S.D.N.Y. 2020) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).[3]

### IV.   Discussion

In their motion to dismiss, Defendants argue Plaintiff's Complaint must be dismissed because it does not sufficiently allege that: (1) the Accounting Note was fraudulently backdated,[4] (2) DOLV was a shell company, (3) any Defendant was an affiliate of DOLV, and (4) the transactions of DOLV shares did not satisfy the holding period requirement under Rule 144. (*See generally* Mot.[5]) None of these arguments have merit.

#### A.   *Evidentiary Materials Submitted by Defendants*

As a preliminary matter, I will not consider the numerous affidavits, email correspondence, and financial reports that Defendants have submitted in support of their motion. (*See* Doc. 36 Exs. 1–14.) Referring to Plaintiff's allegations as "bare assertions . . . unsubstantiated . . . by any of the facts or evidence in the case," (Mot. at 21), Defendants ask me to find, based on the documents they have submitted, that Plaintiff has failed to state a claim. (*See generally id.*) This misunderstands the function of a motion to dismiss, which is to test whether the allegations in a complaint "state a legal cause of action," not "the truth of the complaint's allegations." *U.S. S.E.C. v. Stoker*, 865 F. Supp. 2d 457, 458–59 (S.D.N.Y. 2012).

---

[3] Defendants' reply brief suggests they understand that the stricter standards of the Private Securities Litigation Reform Act ("PSLRA") apply to this action. (*See* Doc. 42 *passim*.) The PSLRA, however, does not govern SEC enforcement actions. *See SEC v. Dunn*, 587 F. Supp. 2d 486, 501 (S.D.N.Y. 2008) ("Any argument that Congress intended to apply the provisions of the PSLRA to SEC enforcement actions ignores the statute's plain language.").
[4] Defendants do not challenge allegations regarding them backdating the convertible note in the B. Fidler Share Issuances. (*See* Compl. ¶¶ 98–116.)
[5] "Mot." or "Motion" refers to Defendants' memorandum of law in support of their motion to dismiss. (Doc. 37.)

With this purpose in mind, in evaluating a motion to dismiss, I generally may look only to Plaintiff's "pleading." Fed. R. Civ. Pro. 12(b). This includes the complaint, as well as any written document that is (1) "attached to it as an exhibit," (2) "incorporated in it by reference," or (3) "integral to the complaint." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59–60 (S.D.N.Y. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). An extraneous document is "integral" to the complaint only if the complaint "rel[ies] heavily upon the document's terms and effect." *Id*. (internal quotation marks and alterations omitted).

Here, Defendants rely on affidavits of individuals who signed the Accounting Note—including the Translator, whom Defendants identify as Anying Huang, and the Nominal Director, whom Defendants identify as Dr. Steven Stein—refuting the allegations that the note was backdated and that the signature was forged. (*Id*. 20.) Defendants also filed copies of corporate records and financial statements in an attempt to demonstrate that DOLV was not a shell company, but instead had substantial non-cash assets. (*Id*. 24.)

None of the documents submitted by Defendants are attached to the Complaint; nor does the Complaint make explicit or implicit reference to these documents. Additionally, these documents are not integral to the Complaint because the Complaint does not "rely heavily upon [their] terms and effect." *See DeLuca*, 695 F. Supp. 2d at 60 (finding extraneous documents not integral to the complaint). Therefore, these documents are extrinsic to Plaintiff's pleading.

When "matters outside the pleadings are presented" on a motion to dismiss, a reviewing court has "only two options: (1) '[it] may exclude the additional material and decide the motion on the complaint alone' or (2) 'it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Palin v.*

*N.Y. Times Co.*, 940 F.3d 804, 810–11 (2d Cir. 2019) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991)).

Defendants do not address my authority to consider extrinsic materials in their memorandum in support of their motion to dismiss. For the first time on reply,[6] Defendants cite to Federal Rule of Civil Procedure 12(d), essentially asking me to convert their motion to dismiss to a motion for summary judgment. (*See* Reply[7] at 9.) I decline to do so. Courts disfavor converting a motion to dismiss to a motion for summary judgment when, as here, the parties have not yet had the opportunity to obtain discovery. *See Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 491 (S.D.N.Y. 2013) (collecting cases and declining to convert a motion to dismiss under Rule 12(d) when the parties have not conducted any discovery); *DeLuca*, 695 F. Supp. 2d at 61 (same). This is especially true here where Plaintiff may seek discovery in order to "question [the] accuracy" of the declarations, affidavits, and other materials Defendants have submitted in support of their motion. *Gonzalez v. City of New York*, No. 14-cv-7721, 2015 WL 6873451, at *5 (S.D.N.Y. Nov. 9, 2015). Consequently, I will not consider and "exclude the additional material and decide the motion on the complaint alone." *Palin.*, 940 F.3d at 810–11 (internal quotation marks omitted).

### B.    *The Complaint Sufficiently Alleges Backdating and Forgery*

Defendants argue that Plaintiff "failed to state a claim that Defendants manufactured a fraudulent Convertible Note" in violation of Section 5 of the Securities Act and Section 10 of the Exchange Act. (Mot. at 20.) I note that Defendants do not challenge whether the allegations in the Complaint, if true, are legally sufficient to state a claim that Defendants violated the law.

---

[6] I need not consider this argument, as it was raised for the first time in a reply brief. *See, e.g.*, *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472 (S.D.N.Y. 2017).
[7] "Reply" refers to Plaintiff's Amended Reply Brief. (Doc. 42.)

12

Instead, Defendants challenge the sufficiency and accuracy of the allegations in the Complaint, claiming they "are refuted by [the] numerous affidavits" that they have submitted and therefore "merely bare assertions with no factual support whatsoever." (*Id.*) As discussed, Defendants' affidavits are irrelevant at this stage of the litigation. On a motion to dismiss, Plaintiff's allegations need not be substantiated by evidence. *See, e.g.*, *Jones v. Harris*, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009) ("Obviously, a plaintiff need not *prove* his allegations to survive a motion to dismiss.") Instead, Plaintiff is only required to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

After examining the allegations in the Complaint, I find that Plaintiff has met this standard. The Complaint alleges: (1) that Thurlow and Ovarec discovered the debt to the Accounting Firm when reviewing documents for the reverse merger, (Compl. ¶¶ 34); (2) that "Thurlow drafted the [Convertible] Note in fall 2016, but dated the note October 13, 2015," (*id.* ¶ 37); (3) that "Oravec obtained the Accountant's signature on the falsely drafted note in or around December 2016," (*id.* ¶ 38); (4) that "one or all of Fidler, Thurlow, or Oravec" then placed the Nominal Director's signature on the note "at or around the same time," "despite the fact that the Nominal Director did not become an officer of DOLC until more than two months *after* the purported date of the note," (*id.*); and (5) that Thurlow and Oravec arranged for the purchase, conversion, and sale of the Note, (*id*. ¶¶ 36, 42, 43). The Complaint specifically details how the Note was converted and sold, including the date of each transaction, the number of shares converted, the price at which the shares were sold, (*see id*. ¶ 43 Table 1), as well as the process of obtaining opinion letters from attorneys and presentation of those opinions to the Broker, (*see, e.g. id.* ¶¶ 53–56). Plaintiff makes similar allegations regarding the issuance of shares involving

13

B. Fidler. (*Id*. ¶¶ 110–16.)  These are not "legal conclusions," "bald allegations," or a "formulaic recitation of the elements" of a securities violation.  *See Ashcroft*, 556 U.S. at 678, 681 (internal quotation marks omitted).  I find that the allegations of the Complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Id*. at 678 (internal quotation marks omitted).

Further, these allegations also meet the heightened pleading requirements of Rule 9(b).  The Complaint specifies the fraudulent statements (backdating the Note and statements related to the backdating), identifies the speakers (Thurlow, Oravec, and Fidler), states the circumstances under which the statements were made (the issuance of the Note and later representations that it was not backdated), and explains why such statements were fraudulent.  *See Nakahata*, 723 F.3d at 197.  The allegations in the Complaint also make out a strong inference of fraudulent intent.  By alleging that Defendants backdated the Note in order to profit from the DOLV stock transactions, the Complaint demonstrates that Defendants "had both motive and opportunity to commit fraud."  *Izquierdo*, 450 F. Supp. 3d at 466 (internal quotation marks omitted).  Moreover, the allegations that Defendants represented the shares as properly "aged" for one year, while fully aware that they were acquired less than a few months prior to being offered for sale, are also "strong circumstantial evidence of conscious misbehavior or recklessness."  *Id.* (internal quotation marks omitted).

### C.   *The Complaint Sufficiently Alleges DOLV was a Shell Company*

For similar reasons, Defendants' argument that Plaintiff has not sufficiently alleged that DOLV was a shell company also fails.  Plaintiff alleges that DOLV "had no or nominal operations and no assets," (Compl. ¶ 51), during approximately 2015–2017, the time that it was "changing its business" from a "mining business with interests in Sierra Leone" to a company that existed "to own and operate rental properties in the United States," (*id*. ¶ 29).  At this stage

of the litigation, as explained above, Plaintiff's allegations are sufficient to allege that DOLV was a shell company under Rule 144.[8] Although Defendants have submitted materials which they claim contradict the allegations in the Complaint, I decline to consider those materials at this stage. Therefore, for purposes of Defendants' motion, I find the Complaint sufficiently alleges that DOLV was a shell company.

### D.    The Complaint's Allegations Regarding Affiliation with DOLV are Sufficient

Defendants next argue that Plaintiff fails to allege that Defendants were "affiliates" of DOLV—and therefore ineligible for the Rule 144 exemptions—because none of the Defendants had authority or power to direct DOLV's management or company policies. (Mot. at 26.) Again, Defendants' argument misses the point. Rule 144(d)(1) provides that "a minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer," before the securities can be resold without registration. 17 C.F.R. § 230.144(d)(1). The law therefore looks not to whether Defendants, as the sellers of unregistered securities, were issuers or affiliates of issuers, but whether they acquired the securities they sold from an issuer or the affiliate.

The Complaint sufficiently alleges that Boucher, Jordan/WBC, and B. Filder acquired securities (the debt from the Convertible Note) from Translator and then sold the converted shares. (Compl. ¶¶ 44, 70, 80, 86.) Indeed, Defendants agree that the Translator, whom they identify as Anying Huang, purchased the Note from the issuer, DOLV, and sold the debt to Boucher and Jordan/WBC. (Mot. at 9–10, 12.)

---

[8] In any event, even if DOLV was not a shell company under Rule 144, Plaintiff sufficiently alleged that Defendants' conduct in backdating the note both (1) made the transactions ineligible for the one-year-holding-period exemption that applies to non-shell-companies, 17 C.F.R. § 230.144(d), and (2) violated the antifraud provisions of the securities laws, *e.g.*, 15 U.S.C. § 78j(b).

Thus, the only person who needs to qualify as an "affiliate" is the Translator—whom Defendants identify as Huang.[9]  Under Rule 144, "[a]n affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."  17 C.F.R. § 230.144(a)(1).  Plaintiff alleges that Thurlow and Oravec arranged for the Translator to purchase the Accounting Note and sell the associated debt to Boucher and WBC/Jordan.  Then, "instead of claiming the proceeds of those sales," Plaintiff alleges that the Translator "directed Oravec to use [the proceeds from the sales] to advance DOLV' interests in the United States."  (Opp'n at 24;[10] *see also* Compl. ¶¶ 36, 44.)  These allegations demonstrate that the Translator took orders from Defendants and acted to promote their interest as well as the interest of DOLV; as such, Plaintiff has sufficiently alleged that the Translator "is controlled by[] or is under common control with" DOLV within the meaning of Rule 144.  Defendants have no answer to these allegations, and instead seem to agree that the Translator took directions from DOLV and its corporate officers.  (Mot. at 9–10, 12.)  Defendants' arguments on this score fail to demonstrate that Plaintiff's Complaint is legally insufficient.

### E. The Complaint's Allegations Regarding the Rule 144 Holding Period are Sufficient

Finally, Defendants argue that the transactions of DOLV shares actually satisfied the holding period requirement under Rule 144, because (1) the Accounting Note was not backdated, and (2) at the time of the issuances, DOLV was a "reporting company" to which the six-month holding period under Rule 144(d)(1)(i), instead of the one-year holding period under Rule

---

[9] In the B. Fidler Share Issuances, B. Fidler allegedly purchased the convertible note directly from the DOLV and resold the shares shortly after, in violation of Rule 144.  No "affiliate" of DOLV is required in this transaction for Plaintiff's claim to succeed.
[10] "Opp'n" refers to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss.  (Doc. 40.)

16

144(d)(1)(ii), should apply.  (Mot. at 26–27.)  The first reason is meritless; I have found that the Complaint sufficiently alleges that Defendants backdated the Accounting Note in violation of § 5 of the Securities Act and § 10(b) of the Exchange Act.

Defendants' second reason is meritless because, as Plaintiff points out by reference to a public SEC filing, DOLV voluntarily suspended its obligation to file periodic reports in May 2014.  (*See* Doc. 40-1 (filing suspension of DOLV's obligation to submit section 13 and 15 reports because it has fewer than 500 persons of record).)  *See also* 17 CFR § 230.144(d)(1)(ii); *Sec. & Exch. Comm'n v. Genovese*, No. 17-CV-5821, 2021 WL 1164654, at *8 (S.D.N.Y. Mar. 26, 2021) (explaining that when an issuer that is not "subject to the reporting requirements of Sections 13 or 15(d) of the Exchange Act," Rule 144 requires a seller to "have held the securities for at least a year before a sale").  I take judicial notice of this filing and find that, for purposes of the motion to dismiss, Plaintiff has alleged that DOLV was not a reporting company.  *See In re Bank of Am. Corp. Sec., Derivative & Emple. Ret. Income Sec. Act*, No. 09-MD-2058, 2013 WL 1777766, at *12 n.4 (S.D.N.Y. Apr. 25, 2013) ("[O]n a motion to dismiss, a court may take judicial notice of an SEC filing that is not referenced in a complaint without converting a motion to dismiss into one for summary judgment." (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).  Defendants offer nothing in response to show that they resumed their obligation of periodic reporting.  Therefore, they have not shown that the Complaint or any portion thereof may be dismissed on this ground.  *See Genovese*, 2021 WL 1164654, at *8 (refusing to apply Rule 144 safe harbor at summary judgment because no reasonable jury could conclude that issuer was a holding company).

As Defendants have not shown that Plaintiff's Complaint failed to state a claim on which relief may be granted, the motion to dismiss is DENIED.

V. **Conflict of Interest in Representation**

Defendants' representation by R. Filder in this case raises a question about conflicts of interest. Federal courts have the "inherent power to preserve the integrity of the adversary process," and may disqualify attorneys upon a finding of conflict of interest. *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (explaining that disqualification of counsel is "a matter committed to the sound discretion of the district court"). An actual conflict of interest exists "when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002). "A potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998). "[W]hen a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the protection of his interests." *Dunton v. County of Suffolk*, 729 F.2d 903, 908 (2d Cir. 1984) (internal quotation marks omitted). "[E]ven an appearance of impropriety requires prompt remedial action by the court." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 565 (2d Cir. 1973).

Here, R. Fidler, who is a licensed attorney in New York, is representing himself and all his co-Defendants.[11] Although I have not found any actual conflict of interest materialized on this motion to dismiss, it is foreseeable that as the case proceeds, R. Fidler's interest may diverge from his clients/co-Defendants. Therefore, it is my duty to inquire into this potential conflict of

---

[11] Since the filing of the motion to dismiss, an attorney has appeared to represent defendant Thurlow, (Doc. 48), but R. Fidler apparently continues to represent all of the defendants.

18

interest and ensure that the R. Fidler's clients/co-Defendants are aware of the potential threat to the protection of their interests. *See Dunton*, 729 F.2d at 908. Accordingly, I will order the parties to brief this issue before any discovery may be conducted. Defendants' briefing should address whether they wish to waive any conflict, and whether they wish to consult independent counsel before doing so. *See Sanchez v. Hoosac Bank*, No. 12-cv-8455, 2014 WL 1326031, at *2 (S.D.N.Y. Mar. 31, 2014) (explaining that co-defendants may waive certain conflicts); *see also* N.Y. Jud. Law App'x R. Pro. Conduct 1.7(b) (McKinney) (explaining principles of conflict and waiver); *id*. cmnt. 23 (same).

## VI.  Conclusion

For reasons above, Defendants' motion to dismiss is DENIED.

IT IS FURTHER ORDERED that on or before September 27, 2024, Defendants shall submit a letter explaining why I should not disqualify R. Fidler from representing his co-Defendants.

The Clerk of Court is respectfully directed to terminate the pending motion at Document 36.

SO ORDERED.

Dated: December 23, 2024
       New York, New York

_____
Vernon S. Broderick
United States District Judge