UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :

SECURITIES AND EXCHANGE          :
COMMISSION,                                             :

                                       Plaintiff,     :          21-CV-7700 (VSB)

             - against -                       :          **OPINION & ORDER**

SIMON PIERS THURLOW, *et al.*,        :

                               Defendants.  :
-------------------------------------------------------X

Appearances:

Richard R. Best
Richard G. Primoff
Abigail Elizabeth Rosen
Elizabeth Claire Rosen
Mary Kay Dunning
United States Securities and Exchange Commission
New York, New York
*Counsel for Plaintiff*

Joseph Anthony Siciliano, Jr.
Joseph A. Siciliano, P.C.
Decatur, Georgia
*Counsel for Defendants Simon Piers Thurlow and Richard Oravec*

Roger L. Fidler
The Law Offices of Roger L. Fidler
New York, New York
*Pro se and counsel for Defendants Bradley Fidler, Bryce Emory Boucher, and Western Bankers Capital Inc.*

Joseph D. Jordan
River Rouge, Louisiana
*Pro se*

VERNON S. BRODERICK, United States District Judge:

On September 5, 2024, I issued an Opinion & Order in which, among other things, I found that the representation by Defendant Roger Leon Fidler ("R. Fidler") of Defendants Bradley Fidler ("B. Fidler"), Bryce Emory Boucher ("Boucher"), and Western Bankers Capital Inc. ("WBC") created a potential conflict of interest, and directed the parties to brief the conflict issue before discovery could proceed. (Doc. 51 at 17–18.)[1] I am in receipt of the parties' various submissions addressing whether R. Fidler should be disqualified from representing his co-defendants. Additionally, I held a hearing on the matter on December 10, 2024.

Based upon my review of the parties' submissions, the statements made by R. Fidler, B. Fidler and Boucher at the hearing, and the arguments made during the hearing, I find that an attorney in R. Fidler's position could not reasonably believe that he could competently and diligently represent his co-defendants. Therefore, R. Fidler is DISQUALIFIED from representing B. Fidler, Boucher, and WBC.

I. **Background**

I assume the parties' familiarity with the relevant facts and procedural history, and only provide a brief summary of the facts to provide context for this Opinion & Order.[2] On September 15, 2021, the Securities and Exchange Commission (the "SEC") filed a complaint charging Defendants Simon Piers Thurlow; Roger Leon Fidler, Esq.; Richard Oravec; Bradley Fidler; Bryce Emory Boucher; Joseph D. Jordan; and Western Bankers Capital Inc. with various violations of the Securities Act, Exchange Act, and regulations promulgated thereunder. (*See*

---

[1] An Amended Opinion & Order was issued on December 23, 2024. (Doc. 125.)

[2] A more complete recitation of the facts can be found in the Opinion & Order denying Defendants' motion to dismiss for failure to state a claim under the Federal Rule of Civil Procedure 12(b)(6). (Doc. 51.)

2

Doc. 1 ("Compl").)[3] The complaint alleges that during a period from approximately 2016 to 2017, Defendants Thurlow, R. Fidler, and Oravec worked together to merge a "shell company" called "DOLV" with a company in China, then issued fraudulently backdated debt instruments convertible to shares of DOLV. (*See* Compl. ¶¶ 1–7.) Defendants Thurlow, R. Fidler, and Oravec then arranged for various of their associates—Defendant Boucher, Defendant Jordan using Defendant WBC, and Defendant B. Fidler—to purchase the debt, convert it to shares of DOLV, and sell the shares without registering them with the SEC. (*See id*.) In connection with each debt purchase, share conversion, and share sale, Defendants lied to attorneys to obtain representation letters that the DOLV shares met statutory requirements for the sales of unregistered securities. (*See id*.) The Defendants selling the shares—Boucher, Jordan/WBC, and B. Fidler—each allegedly funneled portions of their sales back to "Thurlow, [R.] Fidler, Oravec, or others related to them." (*Id*. ¶ 7.)

On September 5, 2024, I denied Defendants' motion to dismiss the complaint. (*See* Doc. 51.) I also found that Defendant R. Fidler's representation of his co-defendants raised a potential conflict of interest and ordered the parties to brief this issue before the case could proceed to discovery. (*Id*. at 17–18.)

On October 23, 2023, while the motion dismiss was pending, attorney Joseph Siciliano appeared to represent Thurlow. (Doc. 48.) On September 24, 2024, attorney Siciliano appeared

---

[3] Specifically, the complaint asserts six claims: (1) that all Defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c), (Compl. ¶¶ 117–19); (2) that Defendants Thurlow, Oravec, Boucher, and B. Fidler violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, (Compl. ¶¶ 120–22); (3) that Defendants Thurlow, Oravec, Boucher, and B. Fidler violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), (Compl. ¶¶ 123–25); (4) that Defendant R. Fidler violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) promulgated thereunder, 17 C.F.R. § 240.10b-5(a), (c), (Compl. ¶¶ 126–28); (5) that Defendant R. Fidler violated Sections 17(a)(1) and (a)(3) of the Securities Act, 15 U.S.C. § 77l(a)(1), (a)(3), (Compl. ¶¶ 129–31); (6) that Defendants Thurlow, Boucher, R. Fidler, B. Fidler, and Oravec are liable for aiding and abetting certain of each others' violations, (Compl. ¶¶ 132–36).

to represent Defendant Oravec. (Doc. 67.) October 3, 2024, I granted the motions of Defendants Thurlow, Oravec, and Jordan for R. Fidler to withdraw as their attorney. (Doc. 80.)

On October 2, 2024, R. Fidler submitted a letter explaining his reasons for representing his co-defendants, attaching conflict-waiver letters of Defendants Boucher, B. Fidler, and Jordan on behalf of WBC. (*See* Doc. 78.) On October 17, 2024, the SEC submitted a letter arguing that R. Fidler should be disqualified from representing his co-defendants. (*See* Doc. 85.) On December 10, 2024, I held a hearing regarding the conflict issue. (*See* Doc 91, *as amended* Doc. 104.) Following the hearing, on December 18, 2024,[4] R. Fidler submitted a letter in further support of his remaining as counsel for his co-defendants. (Doc. 119.) On December 19, 2024, the SEC submitted its post-hearing letter. (Doc. 121.)

## II. Legal Standard

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted). "The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994). The rules of the American Bar Association and state disciplinary rules provide "general guidance," *Hempstead*, 409 F.3d at 132, but the "decision of whether to disqualify counsel must ultimately be guided by the goal of a trial process that lacks any hint of a taint," *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006) (internal quotation marks omitted). *See also Amusement Indus., Inc. v. Stern*,

---

[4] Although R. Fidler's submission was one day late, (*see* Doc. 115 (setting deadline of December 17, 2024)), I will consider it for purposes of this Opinion & Order.

657 F. Supp. 2d 458, 461 (S.D.N.Y. 2009) (explaining that disqualification is appropriate when an attorney's conflict of interest "poses a significant risk of trial taint" (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981))). In deciding whether to disqualify an attorney, a court must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009) (quoting *Hempstead*, 409 F.3d at 132).

### III. Discussion

Several principles guide my inquiry into whether to disqualify attorney R. Fidler from representing certain of his co-defendants. First, co-defendants may have or develop divergent interests in a litigation, for instance "by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party[,] or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." N.Y. R.P.C. 1.7 cmt. 23. Second, an attorney's involvement in the conduct underlying a lawsuit may raise serious conflicts of interest precluding the attorney's representation of a party to the lawsuit. *See* N.Y.R.P.C. 1.7. cmt. 10 ("[I]f the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."); *Gleason v. Zocco*, 941 F. Supp. 32, 35 (S.D.N.Y. 1996) (disqualifying counsel because of his "extensive personal involvement in every aspect of the underlying controversies"); *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 234–35 (S.D.N.Y. 2010) (explaining that defendants' intention to name plaintiff's counsel as third-party defendant supported disqualifying counsel from representing plaintiff); *cf. U.S. v. Fulton*, 5 F.3d 605, 611 (2d Cir. 1993) (concluding that a per se unwaivable conflict exists "when an attorney is implicated in the crimes of his or her client"). Applying these principles to the situation before me, I find that R. Fidler's involvement

in the conduct alleged in the complaint precludes his representation of Boucher, B. Fidler, and WBC.

The complaint alleges that R. Fidler directly or indirectly oversaw and benefitted from the allegedly unlawful conduct of the parties he currently represents. Specifically, R. Fidler is alleged to have played a key role—along with Thurlow and Oravec—in conceiving of the merger and debt issuance that established DOLV as an entity that illegally issued shares, (*see* Compl. ¶¶ 31, 33, 38, 41, 98, 100, 102–05), and directing the actions of Thurlow, who was R. Fidler's "law clerk," (*id*. ¶ 13.) R. Fidler is also alleged to have drafted a press release that caused the price of DOLV shares to increase. (*Id*. ¶¶ 68, 69.) Further, Boucher, Jordan/WBC, and B. Fidler became involved in the allegedly illegal DOLV share sales by way of their existing relationships with R. Fidler. (*Id*. ¶¶ 42–43.) In other words, but for R. Fidler, the parties that he represents—Boucher, Jordan/WBC and B. Fidler—would not have been involved in the transactions at issue. It is reasonable to infer that these Defendants may be asked to testify concerning R. Fidler's actions, including whether R. Fidler directed them to engage in these transactions, especially given the allegations that Boucher and B. Fidler eventually funneled the proceeds of their share sales back to R. Fidler, (*see id*. ¶¶ 93–97, 106–07, 112–13), and given R. Fidler's statements during the hearing that B. Fidler and Boucher sent him the share-sale proceeds to pay back a "loan" or as "legal fees," (Hearing Tr. 11:10–12:5).[5] The complaint also alleges that R. Fidler was more involved in B. Fidler's share sales, including that he discovered the debt underlying the shares, paid for B. Fidler's purchase of the debt, and helped B. Fidler obtain false representation letters to facilitate the sale of the shares. (Compl. ¶¶ 98, 100, 102–05, 106–07,

---

[5] "Hearing Tr." refers to the transcript from the December 10, 2024 hearing I held in this matter. (Doc. 117.) The SEC disagrees with R. Fidler's characterization of B. Fidler's and Boucher's payments. (Hearing Tr. 19:7–11.)

6

112–13.)  These allegations, as well as the Fidlers' familial relationship,[6] make the potential conflict of interest of R. Fidler's representation of B. Fidler even more acute.

In light of these allegations, R. Fidler is disqualified from representing Boucher, WBC, and B. Fidler, because R. Fidler's involvement in the underlying allegations creates a significant risk that his personal interests will diverge from his clients' interests.[7]  The Second Circuit has explained that when an attorney in a criminal case is implicated in related conduct, the attorney's "powerful self-interest in avoiding criminal charges or reputational damage" "will affect virtually every aspect of [the attorney's] representation of the defendant."  *Fulton*, 5 F.3d at 613.  Specifically, the Court of Appeals noted that the attorney's "bias" would impair his or her ability to advise the defendant on whether to cooperate," and noted that the attorney's "judgment about potential defense strategies may be affected by the fear that evidence concerning counsel's involvement might come out."  *Id*.  As R. Fidler agrees,[8] these dynamics exist in the civil context as well—R. Fidler has a "powerful self-interest" in avoiding personal liability in this proceeding.  *Id*.  Further, given R. Fidler's long-established relationships with his co-defendants,[9] there is the potential that he could "use [his co-defendant clients'] trust" to advise them to take positions in the litigation that happen to coincide with his own.  *Gleason*, 941 F. Supp. at 35.  This is

---

[6] Comment 11 to New York Rule of Professional Conduct 1.7 recognizes that a "lawyer's family relationship" may in some circumstances "interfere with both loyalty and professional judgment."

[7] There is no dispute that R. Fidler could not represent any of his co-defendants at trial under the advocate-witness rule.  (*See* Doc. 78 at 2; Doc. 85 at 3.)  The rule, however, applies primarily when "the attorney representing the client before a jury seeks to serve as a fact witness in that very proceeding."  *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir. 2009) (internal quotation marks and emphasis omitted).  Thus, I do not examine whether the rule would support disqualification here, and R. Fidler's arguments pertaining to the rule, (*see* Doc. 119 at 1–5), are irrelevant.  However, there is no question that the advocate-witness rule would present a substantial hurdle at trial.

[8] (*See* Doc. 78 ("[T]he nature of the inquiry [in a criminal case concerning an attorney's conflicts of interest] pretty much states the nature of the undertaking that presents to this Court considering the apparent conflicts present in the instant case.").).

[9] R. Fidler is B. Fidler's father, (Compl. ¶ 17), has represented Boucher "for 30 years or more," (Hearing Tr. 29:2), and currently represents WBC Inc. in an action pending in the Eastern District of Louisiana, *see W. Bankers Cap., Inc. v. Kirton McConkie, PC*, No. 2:23-CV-5124 (E.D. La. Sept. 7, 2023), ECF Nos. 1, 5.

arguably true even if R. Fidler subjectively believes that self-advocacy aligns with advocating for his clients, because the very nature of the "bias" is that it affects the attorney's "judgment." *Fulton*, 5 F.3d at 613.

R. Fidler in fact agrees that the conflicts here are "obvious." (Doc. 78 at 1.) He nonetheless argues, without citation to analogous cases to support his argument, that he should be allowed to represent his co-defendants because each of them has affirmatively waived the conflict. (*See* Docs. 78-1, 78-2, 78-3.) Further, Defendants Boucher and Jordan (on behalf of WBC) stated at the hearing—after listening to a discussion of the nature of R. Fidler's conflict—that they want R. Fidler to continue representing them because of his knowledge of the case and of securities law generally. (*See* Hearing Tr. 21:11-18, 28:20–29:23.) The waivers do not change my conclusion that R. Fidler should be disqualified. Rule 1.7(b) of the New York Rules of Professional Conduct permits a party to waive their attorney's conflicted representation only when "the lawyer reasonably believes that [he or she] will be able to provide competent and diligent representation to each affected client." By using the phrase "reasonably believes," the Rule speaks to an objective standard, and at least one court has expressly evaluated it as such. *See Dorsainvil v. Parker*, 829 N.Y.S.2d 851, 855 (N.Y. Sup. Ct. 2006) (disqualifying attorney after asking whether "a disinterested lawyer could competently represent the respective interest of all potential clients"); *see also Allstate Ins. Co. v. Tarantino*, No. 15-CV-62, 2016 WL 3546197, at *8 (D. Conn. June 23, 2016) ("The word 'reasonable' is generally understood as a signifier of the objective test."); *Reasonable*, Black's Law Dictionary (12th ed. 2024). This makes sense because a conflicted attorney's judgment would be impaired. I find that on the facts of this case, no attorney in R. Fidler's position could reasonably believe he would be able to competently and diligently represent Defendants B. Fidler, Boucher, or WBC. Just as in a

8

criminal case, "no rational defendant would knowingly and intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation," *Fulton*, 5 F.3d at 613, no attorney could reasonably believe R. Fidler's representation is proper.  As the SEC points out, conflicts could arise should B. Fidler, Boucher, or WBC's representative testify that they made their allegedly false representations based on R. Fidler's urging.  (*See* Doc. 85 at 2.)

There is also a significant possibility of a conflict should B. Fidler or Boucher wish to engage in settlement negotiations with the SEC.  Indeed, R. Fidler currently represents WBC in an action against the attorney and law firm that, allegedly based on Thurlow and R. Fidler's false representations, (*see* Compl. ¶¶ 26–65), provided WBC Inc.'s representation letter that its unregistered DOLV shares were freely tradeable.  *See W. Bankers Cap., Inc. v. Kirton McConkie, PC*, No. 2:23-CV-5124 (E.D. La. Sept. 7, 2023), ECF Nos. 1, 5.[10]  In that action, WBC, represented by R. Fidler and another attorney allege that the firm and attorney's decision to settle an SEC enforcement matter was legal malpractice because, contrary to WBC's interests, the settlement "consented to" the SEC's allegations and caused the SEC to initiate the present enforcement action.  *See id*., ECF No. 1 ¶¶ 24–25, 27.  In other words, WBC and R. Fidler have already taken a position that a non-party's decision to settle with the SEC caused them to face this lawsuit.  Thus, R. Fidler is "hardly an appropriate negotiator" should B. Fidler or Boucher wish to settle the SEC's case against them.  *Fulton*, 5 F.3d at 613.

R. Fidler argues that it is premature to order him disqualified at this juncture, as "too much remains unknown" and the allegations in the complaint are unproven.  (*See* Doc. 119 at 5.)  It is true that the allegations in the complaint have not been proven.  However, I have determined

---

[10] The defendants to the action in the Eastern District of Louisiana have filed a motion to disqualify R. Fidler from representing WBC Inc.  *See W. Bankers Cap., Inc. v. Kirton McConkie, PC*, No. 2:23-CV-5124 (E.D. La. Nov. 28, 2023), ECF No. 10.

9

that those allegations are legally sufficient and denied Defendants' motion to dismiss. (*See* Doc. 52.) I have also determined that R. Fidler's conflict exists. Under the facts presented here, waiting is not an option. I have the authority to disqualify R. Fidler "in order to forestall"—that is, prevent—a "violation of ethical principles" before any violation occurs. *Purgess*, 33 F.3d at 144. Such preemptive action "preserve[s] the integrity of the adversary process" and "maintain[s] the highest standards of the profession," *Hempstead*, 409 F.3d at 132 (internal quotation marks omitted), especially in light of the "powerful self-interest" giving rise to the conflict, *Fulton*, 5 F.3d at 613. Further, because discovery has not yet begun, "the prejudice to [Defendants] of having to change counsel at this stage of the proceeding—and the 'tactical advantage' to [Plaintiff]—are insignificant." *See Gleason*, 941 F. Supp. at 36. It is crystal clear that R. Fidler is implicated in the very transactions in which he seeks to represent B. Fidler, Boucher, and WBC. As mentioned, even R. Fidler characterizes the situation as presenting "obvious conflicts" of interest. (Doc. 78 at 1.) Under these circumstances, to preserve the integrity of the adversarial system of justice, I exercise my discretion to disqualify R. Fidler from acting as the legal representative for B. Fidler, Boucher, and Jordan—as WBC's representative.

I note that R. Fidler avers that B. Fidler, Boucher, and Jordan—as WBC's representative—have not retained other attorneys because of various financial difficulties. (*See* Doc. 78 at 1–2; *see also* Docs. 109–111.) The Southern District of New York operates a pro bono program through which the Court may request the appointment of pro bono counsel for litigants who cannot pay for legal representation. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Pro bono counsel has been appointed in similar SEC enforcement matters, *see SEC v. Abarbanel*, No. 21-CV-5429 (S.D.N.Y. Sept. 18, 2024), ECF No. 121, and I am prepared to grant any Defendant's request for pro bono counsel that is properly supported.

10

## IV. Conclusion

For the foregoing reasons, R. Fidler is hereby DISQUALIFIED from representing Defendants Boucher, B. Fidler, and WBC. It is hereby:

ORDERED that if Defendants Boucher, B. Fidler, and/or WBC intend to seek the appointment of pro bono counsel, they shall, no later than January 20, 2025, submit (1) an Application to Proceed *In Forma Pauperis*, available here: https://nysd.uscourts.gov/sites/default/files/2018-06/IFP-application.pdf, and (2) an Application for the Court to Request Pro Bono Counsel, available here: https://nysd.uscourts.gov/sites/default/files/2018-06/Application%20ftct%20Request%20Pro%20Bono%20Counsel.pdf. The parties shall email any completed forms to BroderickNYSDChambers@nysd.uscourts.gov.

IT IS FURTHER ORDERED that R. Fidler is removed as counsel of record for Defendants Boucher, B. Fidler, and Western Bankers Capital Inc.

The Clerk of Court is respectfully directed to note these terminations on the docket, and to mail a copy of this order to Defendant Jordan at Box 23866, New Orleans, LA 70183.

SO ORDERED.

Dated: December 30, 2024
      New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge